UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 06-94-HRW

RAY BELL CONSTRUCTION
COMPANY, INC.                                                PLAINTIFF,

v.        MEMORANDUM OPINION AND ORDER

ABS SERVICES, INC. and
AMERICAN SAFETY CASUALTY
INSURANCE COMPANY,                                     DEFENDANTS.

This matter is before the Court upon Defendant ABS Services, Inc.'s Motion for Partial Summary Judgment [Docket No. 41]. Specifically, ABS Service Inc. seeks entry of an Order barring Plaintiff's claim for attorneys' fees. The motion has been fully briefed by the parties [Docket Nos. 41, 51 and 64] and carefully considered by the Court. For reasons that follow, the Court finds that this Defendant is entitled to judgment as a matter of law with regard to Plaintiff's claim for attorneys' fees.

## BACKGROUND

This civil action arises from the construction of a retaining wall at the Elliot County Medium Security Correctional Facility. In 2001, Plaintiff

RayBell Construction ( hereinafter "Ray Bell")  entered into a contract with the Commonwealth to serve as Builder for the Elliot County facility.

In January 2002, Plaintiff  Ray Bell subcontracted Defendant ABS Services, Inc. (hereinafter "ABS")  to install approximately 3,900 square feet of mechanically stabilized earth retaining wall.

Pursuant to the Subcontract, ABS furnished Raybell with performance and labor bonds, which name RayBell as the obligee, ABS as principal and Defendant American Safety Casualty Insurance Company (hereinafter "ASCIC") as surety.

In February 2002, the 250 feet long and 27 feet high wall was completed.   In the spring of 2004, water began weeping out of the wall face and the wall appeared to be moving.

On or about April 26, 2005, RayBell and ABS entered into another contract pertaining to the repair of the wall (hereinafter "Repair Contract") wherein ABS agreed to repair the wall to the satisfaction of the Commonwealth.   ABS and RayBell agreed to share, and share equally, the projected cost of repair.  ABS and RayBell further agreed that in the event the cost exceeded their projection, they would confer about the increased cost.

The repairs were completed by ABS in June 2005.

This civil action followed. In its Complaint, RayBell claims that it incurred $81,243.39 in remediation costs. RayBell also seeks attorneys' fees. It is this claim upon which ABS claims it is entitled to judgment as a matter of law.

In seeking partial summary judgment, ABS argues that there is no basis for attorneys' fees in this case because RayBell's damages, if any, are those it incurred by virtue of the Repair Contract and it does not provide for an award attorneys' fees. Nor can RayBell recover attorneys' fees under the Subcontract. Although the Subcontract contains a provision for fees, RayBell, by its own allegation, terminated the Subcontract. Further, the Repair Contract has an integration clause which specifically states no other agreement will be recognized and that all prior agreements are superceded by the Repair Contract, thereby extinguishing the Subcontract's provision for attorneys' fees.

RayBell insists that it has sued ABS for breach of the Subcontract, not the Repair Contract. In its Complaint, RayBell states "[pursuant to the Subcontract, [RayBell] is entitled to recovery of all costs incurred and its

reasonable attorneys fees . . . ." [Docket No. 1, ¶21]. RayBell explains that the costs sought "just so happen to be the costs incurred in accordance with the terms of the Repair Contract" [Docket No. 51, p.9]. As the Subcontract contains a provision for fees, RayBell contends that its claim for the same is viable.

RayBell also argues that as the Subcontract and the Repair Contract deal with two different aspects of the retaining wall, the latter's integration clause is not enforceable.

Finally, RayBell contends that in drafting the Repair Contract, the parties reserved, or, at least, intended to reserve, their right to pursue claims under the Subcontract.

## **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure the Court must view the evidence in the light most favorable to the nonmoving party, in this case, the Plaintiff. Thus, when examining the record the Court will resolve doubts and construe inferences in favor of the Plaintiff in an effort to determine if any genuine issues of material fact exist. However, in a series of decisions commonly referred to as the "trilogy", *Celotex Corp. v. Catrett,* 477

U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), the U.S. Supreme Court emphasized that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.  In short, the "trilogy" requires the nonmoving party to produce specific factual evidence that a genuine issue of material fact exists.

The United States Court of Appeals for the Sixth Circuit has interpreted the "trilogy" to mean that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

## ANALYSIS

It is well established that, generally, attorneys' fees are not recoverable as costs absent a statutory or contractual basis for the same.  *See, e.g.*

*Holscaw v. Stephens*, 507 S.W.462 (Ky. 1973).[1]

In this case, it is undisputed that there is no statutory basis for an award of attorneys' fees.

As for a contractual basis for such an award, it too is lacking. The basis of this lawsuit is the failure and subsequent repair of a wall. Thus, it is the language of the Repair Contract which governs. As it does not provide for an award of attorneys' fees, there is no basis for the same. As for the Subcontract's provision for attorneys' fees, it was superceded by the Repair Contract by virtue of the latter's integration clause. The Court finds no error in said clause or any basis upon which not declare it unenforceable.

The Court is not persuaded by RayBell's argument that its costs "just so happen" to be those incurred by virtue of the Repair Contract. It seems that RayBell is actually asserting that the costs it seeks pursuant to the Subcontract were, in fact, incurred under the Repair Contract. This argument is, at best, specious.

---

[1] ABS maintains that Kentucky, rather than Tennessee, law governs the Repair Contract because the subject work was performed in Kentucky and the contract is devoid of a choice of law provision. However, as the application of Tennessee law dictates the same result, this Court will not resolve the choice of law issue.


*Holscaw v. Stephens*, 507 S.W.462 (Ky. 1973).[1]

In this case, it is undisputed that there is no statutory basis for an award of attorneys' fees.

As for a contractual basis for such an award, it too is lacking. The basis of this lawsuit is the failure and subsequent repair of a wall. Thus, it is the language of the Repair Contract which governs. As it does not provide for an award of attorneys' fees, there is no basis for the same. As for the Subcontract's provision for attorneys' fees, it was superceded by the Repair Contract by virtue of the latter's integration clause. The Court finds no error in said clause or any basis upon which not declare it unenforceable.

The Court is not persuaded by RayBell's argument that its costs "just so happen" to be those incurred by virtue of the Repair Contract. It seems that RayBell is actually asserting that the costs it seeks pursuant to the Subcontract were, in fact, incurred under the Repair Contract. This argument is, at best, specious.

---

[1] ABS maintains that Kentucky, rather than Tennessee, law governs the Repair Contract because the subject work was performed in Kentucky and the contract is devoid of a choice of law provision. However, as the application of Tennessee law dictates the same result, this Court will not resolve the choice of law issue.

Nor is the Court moved by RayBell's contention that the Repair Contract's integration clause should not have its intended effect because the two contracts deal with different aspects of the retaining wall.  This is a distinction without a difference.

In support of its effort to preserve its claim for attorneys' fees, RayBell cites  *Security Watch, Inc. v. Sentinel Systems, Inc.,* 176 F.3d 369 (6th Cir. 1999).  In that case, it was held that an arbitration clause in a 1994 agreement did not reach disputes relating to products shipped under earlier agreements even though the 1994 agreement had an integration clause.

RayBell's reliance on *Security Watch*  is misplaced.  The pertinent clause in *Security Watch* is clearly distinguishable from that before this Court.  The arbitration clause in *Security Watch*, by its own terms, did not purport to reach disputes under prior agreements, but, rather, limits its application to disputes arising under that, particular agreement:

> "[t]he parties shall follow these dispute resolution processes in connection with all disputes, controversies or claims ... arising out of or relating to the Products furnished pursuant to ***this Agreement*** or acts or omissions of Distributor or AT & T under ***this Agreement***...."

*Id.* at 372 (emphasis added).  Clearly, reading the clause at issue in *Security*

*Watch* into another agreement, by virtue of an integration clause, flies in the face of logic.

Nor are the facts of *Security Watch* on all fours with the case at bar. The agreements in *Security Watch* governed an ongoing, forward-looking relationship spanning about 6 years, whereas the relationship between RayBell and ABS is confined to a single project.

Finally, the merger clause in *Security Watch* was somewhat flimsy; it referred to prior "communications" and "understandings", not agreements. The language of the integration clause in the instant matter, to wit, that "no other agreement will be recognized", is more specific and, thus, more compelling. It clearly subsumes prior agreements. Indeed, the panel in *Security Watch* recognized this very distinction:

> [t]he district court's interpretation would have been more persuasive had the merger clause referred to **prior agreements** or **prior contracts** rather than prior understandings. The latter phrase suggests **something less than a formal agreement or contract**.

*Id.* at 373, n.3.

Given difference in facts, circumstances, and contract language,

*Security Watch* is inapposite to the case at bar. Thus, this Court is not bound by it.

RayBell also makes much of Paragraph 9 of the Repair Contract:

> [i]n entering into this Agreement, neither [Raybell nor ABS] admits liability to the other, or otherwise waives or limits any rights with regard to the other, or other parties, except as expressly stated in this Agreement.

RayBell perceives this provision as a reservation of its rights to pursue claims, as well as fees, under the Subcontract. However, the much vaunted paragrapgh could also be read as reflective of the parties' understanding that subsequent disputes may arise from the repairs to the wall. Thus, having contemplated the potential for acrimony, and the appurtenant attorneys fees, RayBell could have negotiated for the inclusion of an attorneys fees provision in the Repair Contract. Yet, it did not. One could even go so far as to posit that it agreed to the inclusion of an integration clause instead, thereby waiving its rights to fees.

In any event, RayBell's argument pertaining to its unspoken, subjective

9

intent in entering into the Repair Contract, to-wit, preserving its right to seek attorneys' fees under the Subcontract, runs afoul the well-established rule against parol evidence. Notably, RayBell does not contend, nor does the Court find, that the terms of the Repair Contract are ambiguous. Contractual ambiguity is a condition precedent to the introduction of extrinsic evidence. *See generally, O.P. Link Handle Co., v. Wright*, 429 S.W.2d, 842 (Ky. 1968). Therefore, RayBell's argument, and supporting affidavit, regarding its intention is irrelevant. The allegation of what "one party may have intended is insufficient to alter the plain and unambiguous terms of a written contact." *Blue Diamond Coal Company v. Robertson,* 49 S.W.2d 335, 336 (Ky. 1932)(internal citations omitted).

Nor is there an assertion, much less evidence, that the contract was not fairly negotiated. Thus, the Court can discern of no reason not to recognize and honor the terms of the Repair Contract.

Therefore, as the Repair Contract does not provide for the award of attorneys' fees, no such award will be permitted.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant ABS is entitled to judgment as a matter of law with regard to Plaintiff RayBell's claim for attorneys' fees.

Accordingly, **IT IS HEREBY ORDERED** that Defendant ABS Services, Inc.'s Motion for Partial Summary Judgment [Docket No. 41] be **SUSTAINED** ard that the portion of the Complaint which states a claim for attorneys' fees shall be **DISMISSED WITH PREJUDICE**.

This is NOT a final or appealable order,

This May 8, 2008.

This

Signed By:
Henry R Wilhoit Jr.
United States District Judge